### EGBERT v. ST. PAUL FIRE & MARINE INS. CO.[1]

#### (District Court, S. D. New York. February 10, 1896.)

MARINE INSURANCE — TOWER'S LIABILITY POLICY — EXPENSES OF DEFENDING SUIT—COUNSEL FEES.

> A policy of insurance was issued on a steam tug to cover tower's liability for loss or damage arising from collision or stranding, for which the tug or its owners should be legally liable, and provided that the insurer should not be liable unless the liability of the tug for such loss or damage should be determined by a suit at law. In an action upon the policy, the assured sought to recover, as a part of the loss, his expenses in defending the suit which established the liability of the tug for a loss by collision. *Held*, that the insurer was liable on the policy for such expenses, but excluding counsel fees.

This was a libel by Alice P. Egbert against the St. Paul Fire & Marine Insurance Company to recover upon a tower's liability policy. On settlement of the decree for libelant.

Nelson Zabriskie, for libelant.
Chas. C. Burlingham, for respondent.

BROWN, District Judge. On the settlement of the decree a further question is presented whether the defendant is liable to make good as a part of the loss, the libelant's expenses in defending the

1 Case edited by Leroy S. Gove, of the New York bar.

suit which established the liability of the Morris. The policy required the liability of the steam tug for the accident to be established by suit.

In the case of Xenos v. Fox, L. R. 3 C. P. 630, on a policy insuring the ship Smyrna, but containing also a running-down clause, that is, covering any liability of the ship for running down another vessel, it was held that the costs and counsel fees incurred by the owners of the Smyrna in successfully resisting a damage claim for collision could not be recovered under the policy. But this was put upon the ground that the collision liability was a wholly independent subject of contract, and that the terms of this part of the contract could not be made to include such costs, the agreement of the insurers being only to pay a certain "proportion of what the assured should pay in pursuance of any judgment recovered." Manifestly that agreement did not embrace the costs of a successful defense, since there was no payment under any judgment recovered.

In the present case, the policy declares that the insurers are "to fully indemnify the assured for loss and damage arising from or growing out of any accident caused by collision," etc., "for which said steam tug or its owners may be legally liable." This clause, I think, embraces the necessary expenses of the suit which the insured was by the policy required to resist, in order that the liability of the steam tug for the accident might be legally determined. The owners are "legally liable" for those expenses. The expenses are also a "loss and damage" necessarily growing out of the accident, because the policy requires those expenses to be incurred before any claim can be made under the policy. The case in this regard differs from the numerous class in which such expenses are disallowed, as having been voluntarily incurred, and hence at the suitor's risk. Unless the insurers pay the expenses of the suit, which they have themselves required, they do not keep their agreement "to fully indemnify the assured" for this item of "loss and damage growing out of the accident."

The subsequent clause does, indeed, say that the company shall not be liable unless the liability of the said steam tug for such loss or damage shall be determined by a suit at law, etc.; and the first description of the insurance is also "against such loss or damage as the steam tug may become legally liable for." If the intent of the policy was to limit the company's liability to charges for loss and damage which were a lien upon the tug, the expenses and counsel fees incurred in resisting the suit evidently would not be covered by the policy; for such charges, incurred by the owners, are no lien upon the tug.

I do not think, however, that the phrase "liability of the steam tug" is used in this policy in this specific sense; for the main body of the policy that sets forth specifically what the insurers are "content to bear and take upon themselves," states that the "insurance is to fully indemnify the assured for loss and damage growing out of any accident," etc., "for which said steam tug, or its owners, may be legally liable." This is an express extension of the insurance beyond what constitutes a lien on the vessel, to any and every personal

liability that "grows out" of the accident. Had it been the intention to limit the insurers' liability to charges which were a lien on the vessel, that language would naturally have been employed. The subsequent provision that the liability "of the steam tug" must be determined by suit, is complied with when it is shown by the result of a suit that the steam tug is responsible for the accident. When that is established the previous clause requires that the insurers shall indemnify the assured for any loss, damage or expense for which the "owners may be legally liable," growing out of the accident. In no other way can the inharmonious language of the policy be satisfied.

The expenses are allowed.

On further argument I am satisfied that the counsel fees incurred by the assured in defending the suit are not within the terms of the policy, and cannot be constructively included within its intention. Such expenses are, therefore, disallowed.